Filed 10/13/20  P. v. Quiroz CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073027 |
| v. | (Super.Ct.No. ICR15593) |
| REYNALDO VILLA QUIROZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Russell L. Moore, Jr., Judge.  Affirmed.

Marty V. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 1992, defendant and appellant Reynaldo Villa Quiroz pled guilty to two counts of committing a lewd and lascivious act on a child under the age of 14. (Pen. Code,[1] § 288, counts 1 & 2.) A trial court sentenced him to six years on each count to be served concurrently, suspended execution of the sentence, and placed him on formal probation for a period of five years, which included a term of probation that he serve 365 days in county jail. On January 1, 2017, section 1473.7 went into effect. (Stats. 2016, ch. 739, § 1.) It permits a defendant to challenge a conviction based on a guilty plea where prejudicial error affected the defendant's ability to understand the immigration consequences of the plea. (§ 1473.7.) On April 25, 2018, defendant filed a motion to vacate his convictions under sections 1016.5 and 1473.7. The court denied the motion.

On appeal, defendant contends that the court erred in denying his motion to vacate his convictions. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In 1991, defendant was 24 years old. He admitted to the police that he took the victim, an 11-year-old girl, to Palm Springs for five days, and they had sex three times. The victim said she had been defendant's girlfriend for approximately one year. Defendant admitted knowing it was wrong to have sex with an 11-year-old child but said, "they were in love and what else could they do."

---

[1] All further statutory references will be to the Penal Code unless otherwise noted.

[2] The factual background is taken from the probation officer's report.

On June 5, 1992, the district attorney charged defendant with three counts of committing a lewd and lascivious act on a child under the age of 14.  (§ 288, counts 1-3.) At a plea hearing on June 19, 1992, defendant was assisted by a Spanish language interpreter.  The prosecutor gave a series of advisements, asking defendant each time whether he understood.  Defendant acknowledged that he understood the charges against him and the maximum penalty.  At several points during the hearing, he said he did not understand, and he was allowed to have discussions with his attorney to clarify matters. The prosecutor specifically asked him, "Do you understand further if you're not a citizen of the United States, your plea may have the consequences of deportation, exclusion from admission, or denial of naturalization pursuant to the laws of the United States." Defendant said, "Yes."  Defendant confirmed that he understood he would have to register as a sex offender.  He further confirmed that no one had used any force or threatened him to plead guilty.

When the prosecutor read the charge in count 1 and asked how he pled to the charge, defendant said:  "With regards to that charge, I do not declare myself guilty, no. It depends on what my attorney says.  I need to talk to my attorney."  The court allowed him time to talk to his attorney.  After some discussion, defense counsel said, "The problem is the language barrier, Your Honor."  The court acknowledged such.  Defendant and his attorney had further discussions.  Defense counsel then said he believed defendant understood the nature of the charges, and he was prepared to enter guilty pleas. The court read the charge in count 1 and said, "What's your plea to Count 1?"  Defendant said, "Guilty."  The court then read the charge in count 2, defendant confirmed that he

3

understood the charge, the court asked his plea to count 2, and defendant said, "Guilty." The court took count 3 under submission for dismissal at sentencing. It then found that defendant knowingly, intelligently, and voluntarily waived his rights and entered the pleas.

On August 11, 1992, the court sentenced defendant to a total term of six years in state prison, suspended execution of the sentence, and granted probation for a period of five years. The court dismissed count 3 pursuant to the plea agreement.

On April 29, 2010, defendant was placed in removal proceedings on charges that he was a deportable alien since he committed a sexual offense, which was an aggravated felony. He filed an application with the United States Immigration Court for asylum and to withhold and/or defer removal. On November 7, 2016, the immigration court denied his application, and defendant appealed. The Board of Immigration Appeals (BIA) denied the appeal. Defendant appealed the BIA's decision to the Ninth Circuit Court of Appeals, and the matter is apparently still pending.

On August 23, 2018, defendant filed a motion to vacate his convictions under sections 1016.5 and 1473.7, alleging that his counsel failed to investigate and advise him of the specific consequences of his plea and failed to bargain for an alternative disposition. Defendant asserted that his counsel did not ask about his immigration status or advise him that he would suffer any immigration consequences from pleading guilty. He claimed he would not have entered the plea if he had known about the immigration consequences.

The hearing on the motion was continued several times. On March 19, 2019, defense counsel filed a supplemental memorandum, arguing that defendant's plea was not knowing and intelligent, and he was rushed by his counsel into accepting the guilty plea without an opportunity to reflect and understand the nature of the charges. He further claimed defendant did not knowingly waive his right to trial.

The court held the hearing on the motion to vacate on April 29, 2019. Defendant testified on his own behalf, with an interpreter. He claimed that his attorney told him to just plead guilty, without explaining the charges against him. He said he pled guilty because he felt pressured and frustrated. He said he did not complain to the judge that he was not ready to make his plea because he did not feel he was given any chance to do so. Defendant said his attorney visited him in jail the day before the hearing and just told him to plead guilty and did not tell him he could be deported for pleading guilty. Defendant also said he did not recall the judge explaining to him that he could be deported if he were to plead guilty and was not a citizen.

On cross-examination, defendant testified that he first became aware that there may be immigration problems in late April 2010; prior to that, he had not requested to withdraw his plea or made any claim that he did not understand anything in his 1992 plea. He further testified that he did not remember if he was actually advised by the judge as to whether there were possible immigration consequences to his plea, or if he had the assistance of a Spanish interpreter at the time of his plea. Defendant also said he did not know he was facing a maximum of 24 years in prison. Additionally, he did not recall that the investigating officers testified about the case at the preliminary hearing, or

5

that there was evidence of his confession to the offenses. He also did not recall being interviewed by a police officer after he was arrested in December 1991 or talking to any police officer. Furthermore, defendant did not recall writing a declaration for his motion to vacate his plea. When given a copy of his declaration, he said he was just asked to sign it, but never saw the statements made in it.

On redirect examination, after being shown the transcript of the plea hearing, defendant then said he did recall that the court informed him of the possible deportation consequences, and he told the court he understood. He testified that he told the court he understood "because [he] wasn't sure what [he] was pleading to." He then said he did recall speaking to the police after he was arrested.

The court asked defendant if he understood the charge against him at the plea hearing, and defendant admitted that he understood. The court also asked whether he registered with the local police station as a sex offender when he was placed on formal probation. Defendant said yes and confirmed that he had dutifully registered every year since then. The court asked defendant what offense he thought he had been found guilty of that required him to have to register as a sex offender. He replied, "[h]aving had relations with a minor."

Defense counsel informed the court that defendant's motion to vacate was filed the previous year, and the People were arguing that there was an undue delay in filing it. However, defense counsel argued that defendant had been defending the deportation allegations since 2010 and was still doing so. The court stated that it was not going to find the motion untimely. It said it would have been nice if the motion had been filed

6

before the attorney who represented defendant at the time of the plea passed away. However, the court noted there was definitely legislative intent to give defendants the ability to make a motion under section 1473.7 for "10, 15, 30 years after the fact."

After hearing from the parties, the court denied the motion to vacate without prejudice. The court stated that there was a specific advisement on the record about immigration consequences, which substantially complied with the requirements under section 1016.5. It noted that, immediately after that advisement came the sex offender registration advisement, and that defendant had consistently registered. The court inferred from the fact that defendant understood he had to register as a sex offender, that he also understood the possible immigration consequences of his plea. The court further noted that defendant was "quite active during the plea negotiations," asking questions when he had them.

Furthermore, the court pointed out that defendant had a certified interpreter assisting him, and that the plea judge expressly found he knowingly, intelligently, and voluntarily waived his rights. It noted that the judge watched defendant, heard his responses, and watched him confer with his counsel; thus, it was not for the (motion) court "to step in 27 years later and say that the judge didn't know what he was talking about when he made that finding." Moreover, based on defendant's testimony that he knew he was registering for having sex with a minor, it was "abundantly clear that he knew what he was charged with." The court noted that defendant was represented by different public defenders at different hearings, that it had not heard from any of them, that defendant always had an interpreter, and that he had ample time to raise concerns if

7

he did not understand anything. The court found sufficient evidence that the Office of the Public Defender adequately represented him. Nonetheless, it denied the motion without prejudice, to give counsel the opportunity to bring the motion again, if he had additional witnesses, facts, or law to present.

## DISCUSSION

### The Court Properly Denied Defendant's Motion

Defendant argues the court erred in denying the motion to vacate his conviction under section 1473.7. He claims his plea counsel rendered ineffective assistance (IAC) by failing to inform him of the immigration consequences of the plea, failing to investigate the impact of the plea on his immigration status, and failing to try to negotiate an "immigration-safe disposition." Defendant asserts that his counsel simply told him to plead guilty. He claims that if he had been advised about the immigration consequences of his plea, he would have rejected the prosecution's offer. He further claims that the court advisements did not defeat his IAC claim, since they did nothing "to cure the prejudicial error he suffered" as a result of his counsel's failure to try and negotiate a more favorable agreement. Defendant additionally contends that, even without considering whether counsel was ineffective, there was substantial evidence of prejudicial error that damaged his ability to meaningfully understand and knowingly accept the immigration consequences of his plea. The People contend that defendant has failed to establish any error or that he misunderstood the immigration consequences of his plea. We agree with the People.

A. *Standard of Review*

"We independently review the order denying the motion to vacate which 'presents a mixed question of fact and law.' [Citations.] We defer to the trial court's factual determinations if supported by substantial evidence, but exercise our independent judgment to decide whether the facts demonstrate deficient performance and resulting prejudice." (*People v. Olvera* (2018) 24 Cal.App.5th 1112, 1116.) Ultimately, "we review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm." (*People v. Geier* (2007) 41 Cal.4th 555, 582.)[3]

B. *Defendant Has Failed to Establish He Is Entitled to Relief*

Section 1473.7, which became effective on January 1, 2017, provides that a person who is no longer imprisoned may move to vacate a judgment if the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).) Thus, a defendant is required to demonstrate that he or she suffered prejudicial error. (*Ibid.*) "The court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a)." (§ 1473.7, subd. (e)(1).)

---

[3] In light of our independent determination, we need not address defendant's claim that the motion court applied an incorrect standard in ruling on the motion to vacate.

9

"Ineffective assistance of counsel that damages a defendant's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a guilty plea, if established by a preponderance of the evidence, is the type of error that entitles the defendant to relief under section 1473.7. [Citation.]  To establish ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that he was prejudiced by the deficient performance." (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 75; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-688.)  We note that in 2018, the following language was added to section 1473.7, subdivision (a)(1):  "[a] finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."  (See *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1133.)  In other words, a superior court can make a finding of legal invalidity "if the defendant simply proves by a preponderance of the evidence a 'prejudicial error damaging [his] ability to *meaningfully understand*, defend against, or *knowingly accept* the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.' "  (*People v. Mejia* (2019) 36 Cal.App.5th 859, 871 (*Mejia*).)

At the outset, we note the People's claim that defendant's motion under section 1473.7 was untimely.  The trial court stated that it was not going to find the motion untimely.  We assume arguendo that defendant's motion was timely, address it on the merits, and conclude that the court properly denied it.

10

1. *Defendant Has Failed to Establish IAC*

Defendant contends his trial counsel's performance was defective under *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*). In *Padilla*, the defendant, a lawful permanent resident, pled guilty to drug charges involving the transportation of a large amount of marijuana in his tractor-trailer. Before the defendant pled guilty, his counsel failed to advise him that he would face deportation after pleading guilty and, in fact, told him he " ' "did not have to worry about immigration status since he had been in the country so long." ' " (*Id.* at p. 359.) The United States Supreme Court concluded that it was not difficult to find deficiency since the consequences of the defendant's plea "could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect." (*Id.* at p. 369.) The Supreme Court stated that to provide effective assistance of counsel, "we now hold that counsel must inform [the] client whether [the] plea carries a risk of deportation." (*Id.* at p. 374.)

In *People v. Patterson* (2017) 2 Cal.5th 885, the California Supreme Court set forth its interpretation of the *Padilla* decision as follows: "As the United States Supreme Court has observed, 'Immigration law can be complex,' and there are 'numerous situations in which the deportation consequences of a particular plea are unclear or uncertain.' (*Padilla*, *supra*, 559 U.S. at p. 369.) This means that there are indeed some cases in which the most that can reasonably be said is that the conviction 'may' have adverse immigration consequences. But when, as in this case, federal immigration law specifies in 'succinct, clear, and explicit' terms that a criminal conviction will result in deportability, the United States Supreme Court has held that a criminal defense attorney

11

must accurately advise his or her client of that consequence before the client enters a guilty plea. (*Id*. at pp. 368-369.) The generic advisement under section 1016.5 is not designed, nor does it operate, as a substitute for such advice." (*People v Patterson*, *supra*, 2 Cal.5th at p. 898.) Thus, where mandatory deportation is certain based upon a defendant's plea, *Padilla* requires that criminal defense attorneys advise their clients of that consequence prior to entering their guilty pleas.

However, *Padilla* is not applicable here since defendant pled guilty nearly 18 years before the opinion in *Padilla* was issued. In *Chaidez v. United States* (2013) 568 U.S. 342 (*Chaidez*), the Supreme Court concluded that *Padilla* "announced a new rule" by imposing an obligation on trial counsel to understand and accurately explain the immigration consequences of a plea to a defendant before the entry of that plea. (*Chaidez*, at pp. 352-354, 357-358; see *Padilla*, *supra*, 559 U.S. at p. 369.) Furthermore, the Supreme Court held that *Padilla* could not be applied retroactively to cases that were final at the time the opinion in *Padilla* was issued. (*Chaidez*, at p. 358.) We are unaware of any California cases that have applied *Padilla* retroactively. Therefore, under the then-existing authorities, defendant's plea counsel here had no affirmative obligation in 1992 to research and advise defendant of the actual immigration consequences of his plea. (*Chaidez,* at pp. 357-358.)

In any event, defendant failed to meet his burden of establishing by a preponderance of the evidence any prejudicial error on his plea counsel's part that damaged his ability to understand, defend against, or knowingly accept the immigration consequences of his plea. (§ 1473.7, subds. (a)(1) & (e)(1).) He claims his counsel failed

12

to inform him of any immigration consequences of his plea, failed to investigate the impact of the plea on his immigration status, and failed to negotiate any immigration-safe dispositions. The only evidence he offers that is relevant to his claims is his self-serving declaration and testimony. We note the ease with which a defendant may claim his counsel erred. (See *In re Alvernaz* (1992) 2 Cal.4th 924, 938.) However, "[a]n allegation that trial counsel failed to properly advise a defendant is meaningless unless there is objective corroborating evidence supporting appellant's claimed failures." (*People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 223-224 (*Cruz-Lopez*).) Thus, defendant's claims require "corroboration and objective evidence because a declaration by defendant is suspect by itself." (*Id.* at p. 224.) Moreover, "courts should not disturb a plea merely because of subsequent assertions by a defendant claiming his lawyer was deficient. The reviewing court should also assess additional contemporaneous evidence." (*Ibid.*)

Defendant has presented no such corroborating evidence here. In his declaration, he alleged that he was assigned a public defender. Attorney Beldon was assigned and was succeeded by Attorney Morris. He alleged that his counsel did not ask about his citizenship or advise him of the immigration consequences of his plea. He also stated he entered the United States in 1982, met the victim's family in 1992 (they were neighbors), became friends with the victim, and took her to his relative's home in Palm Springs when she said wanted to run away due to abuse in her home. Defendant denied having any sexual contact with her. He also stated his attorneys did not inform him of any counter offers made to the district attorney. He stated that he married his wife in 2018, they had two daughters, ages 7 and 9, and they owned a home, and that he had no friends or family

13

in Mexico. In addition to his declaration, he attached other exhibits in support of his motion, including the charging documents, the minute orders from the arraignment, change of plea, and sentencing hearings, his removal papers, his criminal history, an immigration petition for an alien relative filed by his wife, and a declaration by his cousin's husband, with whom he and the victim stayed in Palm Springs.

Defendant subsequently filed a supplemental brief in support of his motion, stating that he was denied his right to a fair hearing, that during the plea hearing the court had to repeatedly permit his counsel to consult with him, that he did not knowingly give up his right to a speedy trial, and he did not fully understand the nature of the charges against him or the proceedings. He attached as exhibits a declaration by his current attorney concerning his removal proceedings and the corresponding papers. None of the evidence defendant presented corroborates the claims regarding his plea counsel's alleged deficiencies. There is simply no corroborating evidence that defense counsel did not investigate and advise defendant of the actual immigration consequences of his plea.

We realize that defendant was not able to obtain a declaration from his plea counsel, since that attorney (Morris) passed away. In his reply brief, defendant asserts that he "should not be penalized for being unable to submit a declaration from his deceased trial counsel." However, the unfortunate circumstance of his plea counsel's passing does not relieve him of the burden of proof to establish grounds for relief. (§ 1473.7, subd. (e)(1).) Also, we observe that he was represented by another attorney (Beldon) below but has not submitted a declaration from him.

14

We turn to defendant's contention that his plea counsel rendered deficient representation by failing to negotiate "a disposition with less dire immigration consequences." To the extent he means that his counsel should have negotiated an immigration safe plea, "there is no evidence, only speculation, that an 'immigration safe' plea could have been negotiated." (*People v. Tapia* (2018) 26 Cal.App.5th 942, 955 (*Tapia*).) There is no evidence that defense counsel did not consider, propose and negotiate an immigration neutral offer nor that there was any immigration neutral offer that a prosecutor might reasonably accept, particularly where the defendant was charged with three counts of lewd acts with a minor involving sexual intercourse with an 11 year old.

2. *Defendant Has Not Demonstrated a Prejudicial Error That Damaged His Ability to Meaningfully Understand or Knowingly Accept the Immigration Consequences of His Plea*

Aside from failing to establish IAC, defendant has not met his burden of showing a prejudicial error that damaged his ability to meaningfully understand or knowingly accept the adverse immigration consequences of his plea. (*Mejia*, *supra*, 36 Cal.App.5th at p. 871.) He points to his testimony at the section 1473.7 hearing that he was confused, his counsel did not explain the charges to him, and he pled guilty because he felt pressured by his attorney. He also asserts there was a language barrier. However, the transcript from the plea hearing refutes these claims.

First, the transcript shows defendant was assisted by a certified Spanish interpreter at the plea hearing. Second, it shows that the prosecutor advised him of the potential

15

immigration consequences of the plea, and he affirmed that he understood the advisement. Furthermore, it demonstrates that if he did not understand something, he felt comfortable stopping the proceedings to ask questions. He asked questions on several topics, including the maximum penalty imposed and restitution. When the prosecutor asked if he understood that the court could consider any dismissed counts at the time of sentencing, he responded, "What do you mean? I don't understand." When the prosecutor inquired whether he asked his attorney everything he needed to ask in order to understand the negotiated disposition, defendant said, "Yes. But I wish to have some more time before I'm sentenced to talk to him." The court then allowed him more time to talk to his counsel. We observe that defendant did not ask any questions when he was given the immigration advisement, but just confirmed that he understood.

As the court found when it denied his motion to vacate, defendant was "quite active during the plea negotiations," asking many questions. The court observed that it did "not appear that [he] was unable to chime in and ask questions when he had them." Under these circumstances, defendant has not shown that a prejudicial error occurred that damaged his ability to meaningfully understand or knowingly accept the consequences of his plea. (§ 1473.7, subd. (a)(1).)

Furthermore, defendant has not established that any alleged error prejudiced him. To establish prejudice under section 1473.7, a defendant must show he would not have entered the plea if he had known it would render him deportable. (*Mejia*, *supra*, 36 Cal.App.5th at p. 871.) He alleged in his declaration that, had he known of the consequences of pleading guilty, he would not have done so. However, "a declaration by

16

defendant is suspect by itself." (*Cruz-Lopez, supra,* 27 Cal.App.5th at p. 224.)

Defendant did not offer any contemporaneous evidence to corroborate his claim. (*Mejia*, at p. 872.) Moreover, the statements he made in his declaration did not actually support his claim.

In *Mejia*, *supra*, 36 Cal.App.5th 859, the court found that the defendant demonstrated prejudice by showing that he would not have pled guilty, knowing the immigration consequences, because of his strong ties to the United States and lack of connection to Mexico. The defendant had been living in the United States for eight years, and, at the time of his guilty plea, his wife, son, mother, and six siblings were living here. His only remaining family tie to Mexico was his father, who passed away right before he entered his plea. (*Id*. at p. 872.)

Here, defendant's declaration did not establish a strong tie to the United States or a lack of connection to Mexico. He alleged that he came to the United States in 1982, and his wife, two daughters, father, stepmother, and siblings all reside here; further, only his mother and grandmother lived in Mexico, but "were both shot to death in 1993." However, defendant pled guilty in 1992; thus, his mother and grandmother were still alive in Mexico at that time. Also, he did not meet his wife until 2000 (they married in 2018), and he did not have his daughters until 2009 and 2011. In other words, these factors would not have been considerations for him at the time of his plea.

In addition, the evidence against defendant was strong. He admitted to the police that he and the victim had sexual intercourse, and he knew it was wrong to have sex with an 11-year-old child. The victim also told the police they had sex. Defendant was

17

charged with three counts of violating section 288, and each count carried a maximum penalty of eight years; yet, pursuant to the plea agreement, he was offered probation. Under these circumstances, it is not reasonably probable that he would have declined the plea agreement and risked going to trial, being convicted of all counts and facing a lengthy prison term as well as the same immigration consequences.

In his reply brief, defendant asserts the "corroborating evidence" that he has "steadfastly fought his deportation" for over eight years. However, he does not explain how the fact that he has been fighting his deportation demonstrates a prejudicial error occurred, which damaged his ability to meaningfully understand or knowingly accept the consequences of his plea. (§ 1473.7, subd. (a)(1).) We note he testified that, prior to being placed in removal proceedings in 2010, he had not made any claim that he did not understand anything in his 1992 plea.

Furthermore, as the trial court did, we give weight to the fact that the plea judge found defendant knowingly, intelligently, and voluntarily waived his rights. As the motion court emphasized, the plea judge made this finding after watching defendant, hearing his responses, and watching his counsel confer with him.

Ultimately, defendant's self-serving declaration alleging his plea counsel's deficiencies is not corroborated by anything else in the record. Because defendant failed to meet his burden of proof to establish the elements of section 1473.7, subdivision (a)(1), we conclude the court properly denied the motion to vacate his convictions. (See *Tapia*, s*upra*, 26 Cal.App.5th at p. 956; see also *Lee v. United States* (2017) 137 S.Ct. 1958, 1967 ["Courts should not upset a plea solely because of *post hoc* assertions from a

18

defendant about how he would have pleaded but for his attorney's deficiencies."].)  We note that the court denied defendant's motion without prejudice to give him the opportunity to bring the motion again if he has additional witnesses, facts, or law to present.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS            

J.

We concur:

McKINSTER        
        Acting P. J.

RAPHAEL        
        J.